**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| ALLISON HAMES,<br><br>Plaintiff,<br><br>v.<br><br>SUNTRUST BANK, CITIBANK, N.A., and JEFFERY CRANFORD,<br><br>Defendants. | ) | Case No. 2:18-cv-02121-SHM-cgc<br>JURY DEMANDED |

**MEMORANDUM OF LAW IN SUPPORT OF TRUIST BANK'S MOTION TO DISMISS**

Defendant Truist Bank ("Truist"), formerly known as SunTrust Bank, hereby files this Memorandum of Law in support of its Motion to Dismiss Plaintiff Allison Hames' ("Hames") Amended Complaint for Damages ("Complaint", ECF No. 20) as follows:

**FACTUAL BACKGROUND**

In May 2017, Hames was in the process of purchasing a home in Memphis, with a scheduled closing date of May 30, 2017. Complaint[1], ¶¶ 6, 9. On May 26, Hames received an email that appeared to be from the closing company requesting that she wire the sum of $76,360.55 to an account at Defendant CitiBank ahead of the scheduled closing. *Id.*, ¶¶ 8-10. That day, Hames went to Truist's[2] branch in Bartlett, Tennessee, and requested the wire transfer in person. *Id.* at ¶

[1] All facts alleged in Hames' Amended Complaint are taken as true only for the purpose of Truist's Motion to Dismiss. For avoidance of doubt, Truist does not admit the truth of any of Hames' factual allegations for any other purpose, except as expressly stated to the contrary.

[2] At that time, Truist Bank was known as SunTrust Bank. However, for consistency, SunTrust Bank will be referred to throughout this Memorandum as "Truist."

10; Motion to Dismiss, Exhs. 1-2.[3] Hames provided instructions to wire the sum of $76,360.55 to an account number ending in -6554 in the name of Reside Equity Properties, LLC at Citibank. *Id.*, Exh. 1. The Truist representative who processed Hames' wire transfer verified her identity by reviewing and comparing her Tennessee driver's license and Mastercard. Motion to Dismiss, Exh. 3.

Truist executed Hames' payment order by initiating the wire transfer to Citibank on May 26, 2017 at 3:21 p.m., using the instructions Hames provided. Motion to Dismiss, Exhs. 1-2. After Truist accepted and executed the wire, Hames learned that the email she received with the wiring instructions was not authentic and had been created and sent by Defendant Jeffrey Cranford. Complaint, at ¶ 11. On May 30, 2017 at 9:44 a.m., Hames told Truist that Cranford had defrauded her and asked to cancel the wire. *Id*. at ¶ 12. The cancellation was not processed until 11:37 a.m. on May 30, 2017—nearly four full days after Truist accepted and executed the wire. *Id*. The Complaint pleads that Citi did not agree to cancel the wire transfer. *Id*. ¶ 15.

Hames' funds were deposited into an account owned and/or used by Cranford at Citibank. Complaint, ¶ 15. Cranford has pled guilty to criminal activity involving the theft of Hames' funds. *Id*. at ¶ 16. As a result of Hames having directed Truist to wire funds to Cranford's account, Hames allegedly lost $76,360.55, plus an additional $13,799.03 to cover her down payment, plus additional expenses and losses. *Id.* at ¶ 17.

Arising out of these allegations, Hames asserts common law breach of contract, breach of fiduciary duty and negligence claims against Truist. *See* Complaint, ¶¶ 18-23, 33-38.

---

[3] The Court may consider the documents attached to Truist's Motion to Dismiss without converting this motion to a motion for summary judgment because the matters referenced therein are referred to in the complaint and central to the plaintiff's claims, *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016), and the documents merely "fill[] in the contours and details of the plaintiff's complaint" without adding anything new. *Qiu v. Univ. of Cincinnati*, 803 Fed.Appx. 831, 834 (6th Cir. 2020).

**LEGAL STANDARD**

To bring an actionable claim, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Compliance with Rule 8 demands more than mere "labels and conclusions" or "blanket assertion[s] of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, to survive a motion to dismiss brought pursuant to Rule 12(b)(6), a complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). While not "akin to a 'probability requirement,'" showing a claim is plausible requires the claimant to allege sufficient facts to allow the court to infer "more than the *mere possibility of misconduct*." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (quoting *Twombly*, 550 U.S. at 556).

At the pleading stage, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). However, this presumption of veracity does not extend to bare assertions of legal conclusions. *Iqbal*, 556 U.S. at 679. Nor is this court required "to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Thus, it is only "[a]fter sorting the factual allegations from the legal conclusions, [that] the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief." *Knox Trailers, Inc. v. Maples*, 581 F. Supp. 3d 1000, 1010 (E.D. Tenn. 2022) (citing *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007)). Where the well-pleaded material allegations fail to set out an actionable claim, the plaintiff has failed in "showing that the pleader is entitled to relief," and the claim must be dismissed. FED. R. CIV. P. 8(a)(2); FED. R. CIV. P. 12(b)(6).

## ARGUMENT

The Amended Complaint asserts two counts against Truist. Count I asserts a breach of contract and breach of fiduciary duty claim, and Count IV asserts a negligence/recklessness claim. Both counts fail on the merits for multiple independent reasons, principally because Article 4A of the Uniform Commercial Code (UCC), codified at Tenn. Code Ann. § 47-4A-101 *et seq.*, displaces common law claims arising out of wire transfers. Thus, this Court should dismiss the Amended Complaint against Truist with prejudice.

I. <u>All of the Amended Complaint's Claims Against Truist are Displaced by the UCC Because Those Common Law Claims Relate Exclusively to Truist's Processing of a Wire Transfer</u>.

Article 4A displaces common law claims relating to wire transfers if the claims arise out of a situation addressed by Article 4A or attempt to create rights, duties or liabilities inconsistent with Article 4A. *Wright v. Citizen's Bank of E. Tenn.*, 640 Fed.Appx. 401, 406 (6th Cir. 2016); *Berry v. Regions Fin. Corp.*, 507 F.Supp.3d 972, 978 (W.D. Tenn. 2020). The Amended Complaint makes clear that the breach of contract and breach of fiduciary duty claim arise out of Truist's processing of the wire transfer. For example, the Amended Complaint alleges that Truist "materially breached the parties' contract by refusing and/or failing to timely process the cancellation of the wire transfer," and likewise by failing to "timely and properly act on Plaintiff's behalf" with respect to the wire transfer. Complaint, ¶¶ 21-22. And as to negligence or recklessness, Hames alleges that Truist breached its duty to "timely and properly process cancellations of wire transfers when notified about fraudulent activity." Complaint, ¶¶ 35-36. As these pleadings make clear, all of the Plaintiff's common law claims arise out of Truist's processing of a wire transfer that is governed by Article 4A of the UCC. Therefore, the UCC displaces each of these common law claims, and the Plaintiff cannot change this result by

amending the Complaint. *Wright*, 640 Fed.Appx. at 406 (negligence claims displaced by Article 4A); *Berry,* 507 F.Supp.3d at 978 (same); *Sunset Comm. Health Center, Inc. v. Capital One Fin. Corp.*, __ F.Supp.3d __, 2023 WL 359674, at *6 (D. Minn. 2023) (breach of contract claims); *Capten Trading Ltd. v. Banco Santander Int'l*, 2018 WL 1558272, at *3-4 (S.D. Fla. 2018) (same); *Ma v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 90 (2d. Cir. 2010) (breach of fiduciary duty claims). Thus, this Court should dismiss each of the claims in the Complaint with prejudice because they are displaced by the UCC.

II. Alternatively, the Breach of Fiduciary Duty Claim Fails Because Truist Did Not Owe Plaintiff a Fiduciary Duty.

Even if the breach of fiduciary duty claim was not displaced by Article 4A, the Complaint cannot state a fiduciary-duty claim against Truist. It is black letter law that banks do not ordinarily owe their customers a fiduciary duty. *Glazer v. First Am. Nat'l Bank*, 930 S.W.2d 546, 550 (Tenn. 1996); *Macon Co. Livestock Market, Inc. v. Ky. State Bank, Inc.*, 724 S.W.2d 343, 350-51 (Tenn. Ct. App. 1986). Tennessee law holds that banks may owe their customers a fiduciary duty only in the following limited circumstances: (1) where a bank speaks it must say enough to prevent its words from misleading the other party; (2) where a bank has special knowledge of material facts to which the other party does not have access, the bank may have a duty to disclose those facts; (3) where a bank stands in a confidential or fiduciary relationship to the other party, the bank must disclose material facts; or (4) where a bank has actual knowledge that its customer is committing fraud, it may have a duty to disclose information concerning its customer. *Macon County*, 724 S.W.2d at 350. Hames' Complaint does not allege the presence of any such special circumstances, nor could it, as Truist was not withholding material facts from Hames, Hames and Truist were not in a fiduciary relationship, and Hames (Truist's customer) was not committing fraud. Thus, this

Court should dismiss the fiduciary duty claim with prejudice for this alternative reason. *Atlantic Energy Group, Ltd. v. Northeast Direct Corp.*, 53 F.Supp.3d 810, 816 (D.S.C. 2014); *Capten Trading*, 2018 WL 1558272, at *3-4 .

III. Alternatively, The Breach of Contract Claim Fails Because the Complaint Does Not Identify A Contractual Provision that Truist Breached.

Alternatively, even if the breach of contract claim were not displaced by the UCC, the claim still fails because the Complaint does not identify any contractual provision that Truist breached. Where a plaintiff alleges breach of contract and Tennessee law applies, to survive a motion to dismiss under Rule 12(b)(6) the plaintiff must plead facts which could plausibly show: (1) the existence of a valid contract; (2) a breach of the contract; and (3) damages resulting from the breach. *Berry*, 507 F.Supp.3d at 979 (*citing SPE GO Holdings v. W & O Constr., Inc.*, 759 F. App'x 359, 365 (6th Cir. 2018)). This requires the plaintiff to identify within the complaint a specific contract and a specific provision the defendant allegedly breached. *Id*.

Hames cannot identify any specific contractual provision that Truist allegedly breached. She merely alleges, in a wholly conclusory manner, that she "performed all of the terms, conditions, covenants, and promises provided in the parties' banking and/or other agreements" and Truist "materially breached the parties' contract by refusing and/or failing to timely process the cancellation of the wire transfer." Complaint, ¶ 20-21. This does not "plausibly give rise to an entitlement to relief," *Iqbal*, 556 U.S. at 679, and is fatal to her breach of contract claim. *Berry*, 507 F.Supp.3d at 980. Indeed, courts have dismissed breach of contract claims for failing to specifically identify the provision allegedly breached. *See Indigo Ag, Inc. v. Fearless Grain Marketing, LLC*, 2023 WL 2825351, at *3 (W.D. Tenn. 2023); *Paz v. Wells Fargo Bank*, 2012 WL 6623082, at *3 (M.D. Tenn. 2012). This Court should do the same.

IV. Alternatively, the Negligence/Recklessness Claim Fails Because Truist Did Not Owe Hames a Duty of Care to Protect Her from Cranford's Fraud.

Even if the negligence/recklessness claim was not displaced by Article 4A, Hames would not state a claim against Truist because Truist did not owe her the duties she claims it did. Specifically, Hames alleges that Truist owed her a duty to protect her "from fraudulent activities by third parties including but not limited to properly vetting customer accounts, detecting suspicious activity, and more." Complaint, ¶ 35. Tennessee law is clear on this point – banks do not owe their customers a duty to assist in investigating or preventing fraud by third parties. *See Glazer v. First Am. Nat'l Bank*, 930 S.W.2d 546, 550 (Tenn. 1996); *Guth v. SunTrust Bank, Inc.*, 2007 WL 1135488, at *3 (Tenn. Ct. App. 2007) ("Plaintiff's Amended Complaint alleges, in part, that the Bank owed Plaintiff a fiduciary duty or a 'duty of care to protect its customers from fraudulent, counterfeit, and unauthorized transactions that might lead to financial losses for its customers.' Our Supreme Court has very clearly stated that under Tennessee law, the relationship of a bank to a depositor is simply a debtor/creditor relationship and the bank owes the depositor no fiduciary duty. [*citing Glazer*]. Given this, the Bank owed Plaintiff, a depositor, no fiduciary duty.") Truist did not owe Hames a duty to detect or halt Cranford's fraud; thus her negligence/recklessness claim fails as a matter of law.

V. Though the Complaint Does Not Assert a UCC Claim Against Truist, Hames Cannot State a UCC Claim Against Truist for Failing to Cancel the Wire Transfer.

Hames does not allege (nor could she) that Truist breached Article 4A. However, if and to the extent this Court elects to evaluate whether Hames' Amended Complaint states a cause of action under Article 4A, it should still find that Truist is entitled to dismissal under Rule 12(b)(6) because Truist accepted and executed Hames's wire transfer *before* she told Truist to cancel it.

Under the UCC, "[a] payment order is executed by the receiving bank when it issues a payment order intended to carry out the payment order received by the bank." Tenn. Code Ann. § 47-4A-301(a). In this case, Truist accepted and executed Hames's payment order on May 26 when it issued its payment order to CitiBank, the receiving bank. Motion to Dismiss, Exh. 1.

After Truist executed Hames's payment order, it could not be cancelled without CitiBank's consent. The UCC states that "[a]fter a payment order has been accepted, cancellation or amendment of the order is not effective *unless the receiving bank agrees* or a funds-transfer system rule allows cancellation or amendment without agreement of the bank." Tenn. Code Ann. § 47-4A-211(c) (emphasis added). The Complaint pleads that CitiBank did not agree to cancel the wire transfer by alleging that CitiBank "failed to act with the necessary urgency to complete the cancellation and/or otherwise allowing this fraudulent transaction to occur." Complaint, ¶ 15. And the Complaint does not (and cannot) plead that a funds transfer system rule allows cancellation without CitiBank's agreement. Thus, because the evidence indisputably shows that Truist executed (and thereby accepted, *see* Tenn. Code Ann. § 47-4A-209(a)) Hames' payment order on May 26, before Hames attempted to cancel it on May 30, Hames' attempted cancellation was not effective and Truist is not liable to Hames for its inability to cancel the order. Tenn. Code Ann. § 47-4A-211(c). Though Truist attempted to assist its customer by requesting that the wire be cancelled or reversed, it has no liability to Hames for being unable to do so successfully. *See Trivedi v. Wells Fargo Bank, N.A.*, 609 F.Supp.3d 628, 632 (N.D. Ill. 2022); *Sherlock Investments-Duvall LLC v. Intercoastal Auto Brokers & Logistics, LLC*, 2020 WL 4729066, at *4 (W.D. Wash. 2020) ("[Sender] had no legal right to cancel the ACH Transfer after it was accepted by [Receiving Bank]. Additionally, nothing in Article 4A obligates [Receiving Bank] to assist [Sender] with recovering the funds that [Sender] voluntarily transferred to the imposters.").

This Court may consider the documents that Truist attached to its Motion to Dismiss because they are integral to the Amended Complaint and elucidate the timeline that Plaintiff expressly pled. The Court can consider this evidence without converting the Motion to Dismiss to a motion for summary judgment because the exact sequence of events is central to whether Hames can state a claim against Truist, and the documents merely supply details the Complaint omitted. *Qiu v. Univ. of Cincinnati*, 803 Fed.Appx. 831, 834 (6th Cir. 2020); *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016); *see also Harborview Capital Partners, LLC v. Cross River Bank*, 600 F.Supp.3d 485, 489 (D.N.J. 2022) (in an Article 4A case, considering unaltered wire transfer forms attached to bank's motion to dismiss without converting motion to summary judgment motion for the purpose of determining whether customer authorized transfers). As a result, because the Plaintiff cannot state a claim under the UCC, this Court should dismiss the Complaint with prejudice.

VI. <u>Hames Can Recover in Restitution From the Persons who Defrauded Her.</u>

Truist's non-liability to Hames does not leave her without a remedy. Cranford and his co-defendants, Caesar Oruade and Ayana Saunders, each have pled guilty and been ordered to pay restitution to their victims, including Hames. *See* Judgment in a Criminal Case, *U.S. v. Cranford*, Case No. 18-cr-20103, Doc. No. 248 (as to Cranford); Order on Restitution, *U.S. v. Cranford*, Case No. 18-cr-20103, Doc. No. 312 (as to Oruade and Saunders) (copies attached to Motion to Dismiss as Exhibits 4, 5). Hames should be made whole by the persons who stole her money.

## CONCLUSION

Based on the foregoing, Defendant Truist Bank moves this Court to dismiss it as a defendant from Plaintiff Allison Hames' Amended Complaint for Damages for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

*/s/ Stephen M. Montgomery*

Amy Sabbota Gottlieb (MI Bar P67020)
Dickinson Wright PLLC
2600 West Big Beaver Road, Suite 300
Troy, Michigan 48084
Telephone: 248.433.7286
Facsimile: 844.670.6009
agottlieb@dickinsonwright.com

Stephen M. Montgomery (TN Bar 026489)
Dickinson Wright PLLC
424 Church Street, Suite 800
Nashville, Tennessee 37219
Telephone: 615.244.6538
Facsimile: 844.670.6009
smontgomery@dickinsonwright.com

*Counsel for Defendant Truist Bank*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 20, 2023, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter who are registered with the Court's CM/ECF system.

*/s/ Stephen M. Montgomery*
Stephen M. Montgomery