**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| ALLISON HAMES,<br><br>Plaintiff,<br><br>v.<br><br>SUNTRUST BANK, CITIBANK, N.A., and JEFFERY CRANFORD,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 2:18-cv-02121-SHM-cgc<br>JURY DEMANDED |

**MEMORANDUM IN SUPPORT OF DEFENDANT CITIBANK, N.A.'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR DAMAGES**

Defendant Citibank, N.A. ("Citibank") submits this Memorandum in Support of its Motion to Dismiss Plaintiff's Amended Complaint for Damages (ECF No. 20). As set forth below, Plaintiff fails to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure and any further amendment would be futile. The Court should dismiss Plaintiff's Amended Complaint against Citibank with prejudice.

## INTRODUCTION

Plaintiff Allison Hames ("Plaintiff") was the victim of a financial crime committed by Defendant Jeffery Cranford ("Cranford") and others. Cranford and his criminal co-defendants fraudulently induced Plaintiff to wire funds from her account at Truist (formerly SunTrust) Bank to an account allegedly held by Cranford at Citibank. All of the wrongdoers have now been adjudicated guilty of this crime, sentenced, and ordered to pay restitution. (*See United States v. Cranford*, No. 2:18-cr-20103-JDB, ECF Nos. 247, 273, 293, 312.)

Citibank played no role in Cranford's criminal scheme. Nor does Plaintiff allege that Citibank was aware of Cranford's criminal behavior. At bottom, Citibank abided by its

obligations under Article 4A of the Tennessee Uniform Commercial Code and, in the alternative, Division 11 of the California Uniform Commercial Code as it relates to the wire transfer at issue. These laws do not allow Plaintiff to now foist her losses upon Citibank, an innocent party. Therefore, Plaintiff has not, and cannot, state a claim upon which relief can be granted against Citibank.

## ALLEGATIONS IN THE AMENDED COMPLAINT

In May 2017, Plaintiff was in the process of purchasing a home in Memphis, Tennessee. (ECF No. 8 at PageID 73, ¶ 6). As part of the closing, Plaintiff was required to make a down payment. (*Id*. at ¶ 8.) Shortly before the scheduled closing, Plaintiff received an email purporting "to be from the closing company requesting a domestic wire transfer of $76,360.55 as a requirement of the scheduled closing on May 30, 2017." (*Id*. at ¶ 9.) Plaintiff then contacted her bank, SunTrust Bank ("SunTrust"), and arranged for a wire transfer in the amount of $76,360.55 "from the Plaintiff's account at SunTrust to an account, upon information and belief, and (sic) Citibank." (*Id*. at PageID 74, ¶ 10.) Unbeknownst to Plaintiff at the time, the purported email from the closing company was, in fact, a fraudulent email from Cranford. (*Id*. at ¶ 11.)

When Plaintiff realized that she had fallen victim to Cranford's fraudulent scheme, she allegedly "contacted SunTrust and was informed that the wire transfer of funds had not yet been completed." (ECF No. 20 at PageID 74, ¶ 12.) Plaintiff allegedly notified SunTrust of the fraudulent scheme and was "informed [by SunTrust] that the wire transfer would be cancelled or otherwise reversed." (*Id*.) Nevertheless, the wire transfer was processed, and the funds left Plaintiff's account. (*Id*. at ¶ 13.)

Plaintiff alleges, "upon information and belief," that the funds from her SunTrust account "were improperly deposited into an account owned and/or used by Jeffrey Cranford at Citibank." (*Id*. at ¶ 15.) The Amended Complaint goes on to allege that, "[i]n addition or in the alternative,

Citibank refused and/or otherwise failed to act with the necessary urgency to complete the cancellation and/or otherwise allowing this fraudulent transaction to occur." (*Id.*) Based on these allegations, Plaintiff alleges one claim against Citibank for "OTHER RECKLESS AND/OR NEGLIGENT ACTIONS AND/OR OMISSIONS."[1] (*Id.* at PageID 77, Fourth Claim).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court explained the pleading requirements of Rule 8(a)(2) and the requirements for surviving a Rule 12(b)(6) motion to dismiss in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-80 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-63 (2007). Specifically, a complaint does not meet the pleading standard if it contains mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Instead, to comply with Rule 8(a)(2) and survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not a probability requirement, but it does ask for more than mere possibility; if a complaint pleads facts "merely consistent with" a theory of liability, it falls short

---

[1] The Amended Complaint specifically identifies Truist Bank, formerly known as SunTrust Bank, as the liable party under her first claim for relief. (*See* ECF No. 20 at PageID 75.) Further, the Amended Complaint specifically identifies Cranford as the liable party for Plaintiff's second and third claims. (*Id.* at PageID 76–77.) Citibank does not address these claims in its Motion to Dismiss because Plaintiff expressly asserts these claims against other parties. Citibank expressly reserves its right to move to dismiss these additional claims in the event Plaintiff argues that she intended to also assert these claims against Citibank.

of "the line between possibility and plausibility." *Twombly*, 550 U.S. at 545-46. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555.

Further, the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)). "Threadbare recitals . . . supported by mere conclusory statements, do not suffice." *Twombly,* 550 U.S. at 555. A complaint can only survive a Rule 12(b)(6) motion to dismiss if it contains factual allegations that are "enough to raise a right to relief above the speculative level, on the assumption that all the [factual] allegations in the complaint are true." *Twombly,* 550 U.S. at 555.

## **ARGUMENT**

Article 4A of the Tennessee Uniform Commercial Code, Tennessee Code Annotated § 47-4A-101 *et seq*., and, in the alternative, Division 11 of the California Uniform Commercial Code, California Commercial Code § 11101, *et seq*., preempt Plaintiff's common law claim against Citibank. What is more, Plaintiff does not have a valid claim against Citibank under Article 4A or Division 11; nor has she attempted to plead such a claim. Finally, in the event neither Article 4A nor Division 11 preempts Plaintiff's claim, Plaintiff has failed to state a claim upon which relief can be granted.

### I. Choice of Law

As an initial matter, there are two jurisdictions whose laws could potentially apply to this case. Tennessee is where Plaintiff resides and where the injury caused by Cranford likely occurred. (*See* ECF No. 20 at PageID 72, ¶ 1.) California is where Cranford purportedly resided and maintained the Citibank account to which Plaintiff wired the funds at issue. (*See id*. at PageID 73, ¶ 4.) This Court applies Tennessee's choice-of-law rules to determine which jurisdiction's substantive law applies to Plaintiff's claims because subject matter jurisdiction in

this case is based on diversity of citizenship. *See Performance Contracting Inc. v. DynaSteel Corp.*, 750 F.3d 608, 611 (6th Cir. 2014) (observing that "a federal court sitting in diversity applies the choice-of-law rules of the state in which the court sits."). Tennessee utilizes the "most significant relationship" test of the Restatement (Second) of Conflicts of Law for tort cases. *Maverick Grp. Mktg., Inc. v. Worx Env't Prod., Inc.*, 99 F. Supp. 3d 822, 839 (W.D. Tenn. 2015) (citations omitted). Under this test, "the law of the place of injury will normally apply unless another state has a more significant relationship to the occurrence and the parties." *Id*. This would suggest Tennessee law applies to Plaintiff's claims.

However, before embarking on a choice-of-law analysis, it must be determined "if there is, in fact, a conflict of laws." *Lemons v. Cloer*, 206 S.W.3d 60, 64–65 (Tenn. Ct. App. 2006). In this case, there is no actual conflict because Division 11 of the California Uniform Commercial Code "is identical to article 4A of the Uniform Commercial Code[.]" *Zengen, Inc. v. Comerica Bank*, 158 P.3d 800, 802 n.1 (Cal. 2007). And, as discussed in more detail below, Plaintiff's claims are preempted by both Article 4A of the Tennessee Uniform Commercial Code and Division 11 of the California Uniform Commercial Code.

## II. The Uniform Commercial Code Preempts Plaintiff's Common Law Claim and Request for Punitive Damages Against Citibank.

Plaintiff asserts a single, ambiguous claim against Citibank for "other reckless and/or negligent actions and/or omissions." (ECF No. 20 at PageID 77.) This claim is based on Citibank's alleged failure to prevent the fraudulent wire transfer from occurring. (*Id*. at ¶¶ 35–36.) Yet, Plaintiff's claim arises out of conduct governed by Article 4A of the Tennessee Uniform Commercial Code or, in the alternative, Division 11 of the California Uniform Commercial Code. "[W]here common-law claims arise out of a situation covered by the provisions of Article 4A or attempt to create rights, duties, and liabilities inconsistent with

Article 4A, Article 4A preempts those claims." *Berry v. Regions Fin. Corp.*, 507 F. Supp. 3d 972, 978 (W.D. Tenn. 2020) (citing *Wright v. Citizen's Bank of East Tennessee*, 640 F. App'x 401, 406–09 (6th Cir. 2016)). Further, "[d]ivision 11 provides that common law causes of action based on allegedly unauthorized funds transfers are preempted in two specific areas: (1) where the common law claims would create rights, duties, or liabilities inconsistent with division 11; and (2) where the circumstances giving rise to the common law claims are specifically covered by the provisions of division 11." *Zengen, Inc. v. Comerica Bank*, 158 P.3d 800, 808 (Cal. 2007).

"Article 4A governs a specialized method of payment referred to in the Article as a funds transfer but also commonly referred to in the commercial community as a wholesale wire transfer." Tenn. Code Ann. § 47-4A-102, cmt.; Cal. Com. Code § 11102, cmt. "Funds transfer" is defined as:

> [T]he series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order. The term includes any payment order issued by the originator's bank or an intermediary bank intended to carry out the originator's payment order. A funds transfer is completed by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order[.]

Tenn. Code Ann. § 47-4A-104(a); Cal. Com. Code § 11104. "Article 4A was crafted with the express purpose of creating—in an age of increasing automation—inflexible rules of liability for wire transfer disputes." *First Sec. Bank of New Mexico, N.A. v. Pan Am. Bank*, 215 F.3d 1147, 1152 (10th Cir. 2000). The drafters of Article 4A made a "deliberate decision . . . to use precise and detailed rules to assign responsibility, define behavioral norms, allocate risks and establish limits on liability, rather than to rely on broadly stated, flexible principles." Tenn. Code Ann. § 47-4A-102, cmt.; Cal. Com. Code § 11102, cmt. "Consequently, resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent

with those stated in this Article." Tenn. Code Ann. § 47-4A-102, cmt.; Cal. Com. Code § 11102, cmt.

In this case, Citibank is the "beneficiary bank," because it is "the bank identified in a payment order in which an account of the beneficiary is to be credited pursuant to the order[.]" Tenn. Code Ann. § 47-4A-103(a)(3); Cal. Com. Code § 11103(a)(3). Tennessee Code Annotated § 47-4A-209 governs the acceptance of a payment order[2] by a beneficiary bank. *See also* Cal. Com. Code § 11209. A beneficiary bank accepts a payment order when, among other things, it credits the account of the beneficiary of the payment order. Tenn. Code Ann. § 47-4A-209(b)(1); Cal. Com. Code § 11209(b)(1). The official comments state:

> In the typical case, the beneficiary's bank simply receives payment from the sender of the order, credits the account of the beneficiary and notifies the beneficiary of the credit. **Acceptance by the beneficiary's bank does not create any obligation to the sender.** Acceptance by the beneficiary's bank means that the bank is liable to the beneficiary for the amount of the order.

Tenn. Code Ann. § 47-4A-209, cmt. 4; Cal. Com. Code § 11209, cmt. 4 (emphasis added). As the beneficiary bank in this case, Citibank's obligations upon acceptance of Plaintiff's payment order are set forth in Tennessee Code Annotated § 47-4A-404 or, in the alternative, the identical provisions of California Commercial Code § 11404.

Under this provision, Citibank was obligated "to pay the amount of the order to the beneficiary of the order" upon acceptance. Tenn. Code Ann. § 47-4A-404(a); Cal. Com. Code § 11404(a). These statutory provisions do not include any obligations between the beneficiary bank, Citibank, and the sender of the payment order, Plaintiff. In fact, in situations such as those

[2] A "payment order" is defined as "an instruction of a sender to a receiving bank, transmitted orally, electronically, or in writing, to pay, or to cause another bank to pay, a fixed or determinable amount of money to a beneficiary" when certain circumstances are met. Tenn. Code Ann. § 47-4A-103(a)(1); Cal. Com. Code § 11103(a)(1).

alleged in Plaintiff's Amended Complaint, the official comments to Tennessee Code Annotated § 47-4A-404 and California Commercial Code § 11404 provide that Plaintiff's sole remedy is against Cranford, and that Citibank could not refuse to credit Cranford's account:

> The last clause of subsection (a) does not apply to cases in which a funds transfer is being used to pay an obligation and a dispute arises between the originator and the beneficiary concerning whether the obligation is in fact owed. **For example, the originator may try to prevent payment to the beneficiary by the beneficiary's bank by alleging that the beneficiary is not entitled to payment because of fraud against the originator or a breach of contract relating to the obligation. The fraud or breach of contract claim of the originator may be grounds for recovery by the originator from the beneficiary after the beneficiary is paid, but it does not affect the obligation of the beneficiary's bank to pay the beneficiary.** Unless the payment order has been cancelled pursuant to Section 4A-211(c), there is no excuse for refusing to pay the beneficiary and, in a proper case, the refusal may result in consequential damages. Except in the case of a book transfer, in which the beneficiary's bank is also the originator's bank, the originator of a funds transfer cannot cancel a payment order to the beneficiary's bank, with or without the consent of that bank, because the originator is not the sender of that order. Thus, the beneficiary's bank may safely ignore any instruction by the originator to withhold payment to the beneficiary.

Tenn. Code Ann. § 47-4A-404, cmt. 3; Cal. Com. Code § 11404, cmt. 3 (emphasis added).

Article 4A and Division 11 also contain provisions addressing cancellation and amendment of payment orders. *See* Tenn. Code Ann. § 47-4A-211; Cal. Com. Code § 11211. This section of Article 4A and Division 11 provides the exclusive means for cancelling or amending payment orders. *See* Tenn. Code Ann. § 47-4A-211, cmt. 1 ("This section deals with cancellation and amendment of payment orders. It states the conditions under which cancellation or amendment is both effective and rightful."); Cal. Com. Code § 11211, cmt. 1 (same). Except as provided in the statute, "cancellation or amendment after acceptance by the beneficiary's bank is not possible unless all parties affected by the order agree." Tenn. Code Ann. § 47-4A-211, cmt. 4; Cal. Com. Code § 11211, cmt. 4.

The Amended Complaint alleges that Citibank owed Plaintiff a duty "to exercise reasonable care and skill in conducting bank activities[,]" "to protect customers and consumers

from fraudulent activities[,]" and to "timely and properly process cancellation of wire transfers when notified about fraudulent activity." (ECF No. 20 at PageID 77, ¶ 35.) Each of Plaintiff's allegations against Citibank concerns conduct governed by Article 4A of the Tennessee Uniform Commercial Code or, in the alternative, Division 11 of the California Uniform Commercial Code. Specifically, Tennessee Code Annotated §§ 47-4A-209, 47-4A-211, and 47-4A-404 govern Citibank's duties and liabilities as it relates to the wire transfer at issue in the Amended Complaint.[3] Therefore, Article 4A provides "the exclusive means of determining the rights, duties and liabilities" between Plaintiff and Citibank. Tenn. Code Ann. § 47-4A-102, cmt.; *see also* Cal. Com. Code § 11102, cmt.

In fact, in a recent case involving nearly identical allegations to those asserted in the Amended Complaint, the Honorable Jon P. McCalla ruled that a common law claim for negligence involving a wire transfer asserted against an originating bank and a beneficiary bank was displaced by Article 4A "because the Defendants' conduct alleged by the Plaintiffs is within the scope of Article 4A." *Berry v. Regions Fin. Corp.*, 507 F. Supp. 3d 972, 979 (W.D. Tenn. 2020). In *Berry*, the plaintiffs received fraudulent emails purporting to be from their closing attorney with wire transfer instructions, which the plaintiffs relied upon when causing a wire transfer order in the amount necessary to close the sale. *Id*. at 975. Upon learning that they had been defrauded, the plaintiffs filed a lawsuit against Regions Bank, the plaintiffs' bank, and Truist Bank, the beneficiary's bank. *Id*. at 976. The plaintiffs later moved for leave to file an amended complaint to assert, among other claims, a claim for common law negligence against both banks based primarily on the allegation that the defendant banks failed to maintain or abide by commercially reasonable security measures to prevent fraudulent wire transfers. *Id*. at 978.

[3] *See also* Cal. Com. Code §§ 11209, 11211, and 11404.

The defendant banks argued in response that the plaintiffs' negligence claim was preempted by Article 4A of the Tennessee Uniform Commercial Code. *Id*. at 977–78. Judge McCalla agreed with the defendant banks, and he ruled that the plaintiffs' proposed negligence claim was futile because "[t]he extent of Defendants' duty to maintain and abide by commercially reasonable security procedures in relation to funds transfers is set forth in Article 4A." *Id*. at 978.

Courts interpreting Division 11 of the California Uniform Commercial Code have similarly held that common law claims are preempted in cases analogous to this one. *See, e.g.*, *Gray v. JPMorgan Chase Bank, N.A.*, No. CV2203090DSFPVCX, 2023 WL 2471381, at *3 (C.D. Cal. Mar. 13, 2023); *Forefront Telecare Inc. v. Bank of Am., N.A.*, No. 19-CV-03866-SK, 2019 WL 13201988, at *3 (N.D. Cal. Aug. 21, 2019); *Sliders Trading Co. L.L.C. v. Wells Fargo Bank NA*, No. 17-CV-04930-LB, 2017 WL 6539843, at *5–8 (N.D. Cal. Dec. 21, 2017). Numerous other courts have also determined that common law claims based on conduct regulated by Article 4A are preempted. *See, e.g.*, *Wright v. Citizen's Bank of E. Tennessee*, 640 F. App'x 401, 404–10 (6th Cir. 2016) (holding that Tennessee's version of Article 4A preempted common law claims for negligence and fraud arising out of a wire transfer); *McLaughlin v. Comerica Bank*, No. 21-12661, 2022 WL 16040109, at *6 (E.D. Mich. Apr. 18, 2022) (ruling that the plaintiff's common law claims were preempted by Article 4A "because the alleged harm is the result of activity that is governed by Article 4A's provisions."); *Langston & Langston, PLLC v. SunTrust Bank*, 480 F. Supp. 3d 737, 742 (S.D. Miss. 2020) (ruling that "all negligence allegations relating to [the misdescription of a wire transfer] are displaced by UCC § 4A-207."); *DeFazio v. Wells Fargo Bank Nat'l Ass'n*, No. CV 20-375 (SRC), 2020 WL 1888252, at *3 (D.N.J. Apr. 16, 2020) (ruling that the plaintiff's negligence claims against the beneficiary bank concerning wire transfers were preempted by Article 4A).

Moreover, although the Tennessee appellate courts have not addressed preemption of common law claims under Article 4A, the Tennessee Court of Appeals has held that the Tennessee Uniform Commercial Code preempts common law claims that would displace the UCC's provisions governing transactions under Articles 3 and 4. *Fuller v. Cmty. Nat'l Bank*, No. E201802023COAR3CV, 2020 WL 1485696, at *11–12 (Tenn. Ct. App. Mar. 27, 2020); *Mark IV Enterprises, Inc. v. Bank of Am., N.A.*, No. M201700965COAR3CV, 2018 WL 3146305, at *3–4 (Tenn. Ct. App. June 26, 2018); *C-Wood Lumber Co. v. Wayne Cnty. Bank*, 233 S.W.3d 263, 280–82 (Tenn. Ct. App. 2007).

What is more, Plaintiff's request for punitive damages against Citibank is also preempted by Tennessee Code Annotated § 47-1-305(a), which provides that: "The remedies provided by chapters 1-9 of this title must be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed but neither consequential or special damages nor penal damages may be had except as specifically provided in chapters 1-9 of this title or by other rule of law." *See also* Cal. Com. Code § 1305(a). "The UCC does not provide for punitive damages for unauthorized funds transfers." *JESCO Constr. Corp. v. Wells Fargo Bank, N.A.*, No. 1:20CV147-HSO-JCG, 2021 WL 9629459, at *12 (S.D. Miss. Mar. 11, 2021). Article 4A contains no provision specifically providing for an award of punitive damages.[4] Therefore, Plaintiff cannot seek punitive damages against Citibank in this case.

For these reasons, Plaintiff's common law claim against Citibank for "other reckless and/or negligent actions and/or omissions" and her request for punitive damages are preempted by Article 4A of the Tennessee Uniform Commercial or, in the alternative, Division 11 of the California Uniform Commercial Code.

---

[4] Division 11 of the California Uniform Commercial Code does not contain any provision specifically providing for an award of punitive damages either.

## III. Plaintiff Fails to State a Claim Against Citibank for Violation of Article 4A or, in the Alternative, Division 11.

Plaintiff has not attempted to plead a claim against Citibank for violation of Article 4A of the Tennessee Uniform Commercial Code or Division 11 of the California Uniform Commercial Code. (*See* ECF No. 20.) However, even if she did, Citibank is not liable to Plaintiff under Article 4A or Division 11. First, "[a] receiving bank is not the agent of the sender or beneficiary of the payment order it accepts, or of any other party to the funds transfer, and the bank owes no duty to any party to the funds transfer except as provided in this chapter or by express agreement." Tenn. Code Ann. § 47-4A-212; Cal. Com. Code § 11212. "No receiving bank, whether it be an originator's bank, an intermediary bank or a beneficiary's bank, is an agent for any other party in the funds transfer." Tenn. Code Ann. § 47-4A-212, cmt.; Cal. Com. Code § 11212, cmt. Therefore, Citibank owed no duty to Plaintiff in this case. Second, Citibank was obligated upon acceptance of the payment order "to pay the amount of the order to the beneficiary of the order." Tenn. Code Ann. § 47-4A-404(a); Cal. Com. Code § 11404(a). Plaintiff's remedy is against the beneficiary of the wire transfer, Cranford, not Citibank. Tenn. Code Ann. § 47-4A-404, cmt. 3; Cal. Com. Code § 11404, cmt. 3.

Finally, Plaintiff does not allege any facts plausibly suggesting that Citibank was ever notified of her alleged attempts to cancel the wire transfer. (*See* ECF No. 20.) And, even if Citibank was notified, Citibank had no obligation to cancel the transaction:

> Unless constrained by a funds transfer system rule, a receiving bank may agree to cancellation or amendment of the payment order under subsection (c) **but is not required to do so regardless of the circumstances.** If the receiving bank has incurred liability as a result of its acceptance of the sender's order, there are substantial risks in agreeing to cancellation or amendment. This is particularly true for a beneficiary's bank. Cancellation or amendment after acceptance by the beneficiary's bank can be made only in the four cases stated and the beneficiary's bank may not have any way of knowing whether the requirements of subsection (c) have been met or whether it will be able to recover payment from the beneficiary that received payment. Even with indemnity the beneficiary's bank

> may be reluctant to alienate its customer, the beneficiary, by denying the customer the funds. Subsection (c) leaves the decision to the beneficiary's bank unless the consent of the beneficiary's bank is not required under a funds transfer system rule or other interbank agreement.

Tenn. Code Ann. § 47-4A-211, cmt. 5; Cal. Com. Code § 11211, cmt. 5 (emphasis added). Accordingly, Citibank was not required to cancel the wire transfer, and Plaintiff cannot state a claim against Citibank under the UCC.

## IV. Alternatively, Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted for "Other Reckless and/or Negligent Actions and/or Omissions."

Finally, in the event Plaintiff's claim against Citibank is not preempted by Article 4A or Division 11, Plaintiff fails to state a claim upon which relief could be granted against Citibank for "other reckless and/or negligent actions and/or omissions." (*See* ECF No. 20 at PageID 77.) Plaintiff's claim, based in negligence, is contingent upon the existence of a duty owed by Citibank to Plaintiff. *See Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009) (reciting the elements of a negligence claim under Tennessee law); *see also Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 912 (S.D. Cal. 2020) (reciting the elements of negligence claim under California law). "[T]he question of whether a defendant owes a duty of care to the plaintiff is a question of law to be determined by the courts." *Id*. at 365; *see also J.L. v. Children's Inst., Inc.*, 99 Cal. Rptr. 3d 5, 11 (Cal. Ct. App. 2009).

"The almost-universal law in this country is that banks owe a duty of care only to their own customers." *SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 357 (6th Cir. 2014) (citing cases); *see also Belle Meade Title & Escrow Corp. v. Fifth Third Bank*, 282 F. Supp. 3d 1033, 1038 (M.D. Tenn. 2017) (ruling that, "[a]lthough there appears to be no Tennessee case directly on point, this court concludes that Tennessee courts, if confronted directly with the question, would conclude that banks do not owe a duty of care to non-customers."). "[A]bsent extraordinary and specific facts, a bank does not owe a duty of care to a noncustomer." *Gil v.*

*Bank of Am., N.A.*, 42 Cal. Rptr. 3d 310, 316 (Cal. Ct. App. 2006) (quoting *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 56 Cal. Rptr. 2d 756 (Cal. Ct. App. 1996)). "Moreover, the law is well-settled that banks do not owe non-customers a duty to protect them from the intentional torts of the bank's customers." *Faeth v. Regions Bank*, No. 3:12-00162, 2012 WL 5989362, at *5 (M.D. Tenn. Nov. 29, 2012), report and recommendation adopted, No. 3:12-CV-00162, 2013 WL 146180 (M.D. Tenn. Jan. 14, 2013).

Plaintiff does not allege that she was a customer of Citibank. Therefore, Citibank did not owe a duty to protect her from becoming the victim of Cranford's fraudulent activities. Accordingly, Plaintiff cannot establish that Citibank owed her a duty of care as is necessary to establish a prima facie claim for negligence.

## CONCLUSION

For the reasons set forth above, Plaintiff fails to state a claim upon which relief can be granted against Citibank. Therefore, this Court should grant Citibank's Motion to Dismiss and dismiss Plaintiff's claim against Citibank with prejudice.

Dated: June 21, 2023.

Respectfully submitted,

s/ Matthew S. Mulqueen

Matthew S. Mulqueen (TN # 28418)
Pete A. Brunson (TN #37109)
BAKER, DONELSON, BEARMAN
CALDWELL & BERKOWITZ, PC
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: 901.526.2000
mmulqueen@bakerdonelson.com
pbrunson@bakerdonelson.com

*Counsel for Defendant Citibank, N.A.*