**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **ALLISON HAMES,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 2:18-cv-02121-SHM-cgc** |
| **SUNTRUST BANK, CITIBANK, N.A., AND JEFFREY CRANFORD,** | ) | |
| **Defendants.** | ) | |

**ORDER ADOPTING REPORT AND RECOMMENDATION, AWARDING PUNITIVE DAMAGES, AND GRANTING DEFAULT JUDGMENT**

Plaintiff Allison Hames seeks damages for losses stemming from a wire transfer fraudulently induced by Defendant Jeffrey Cranford. (See ECF Nos. 68, PageID 367; 68-1, PageID 370-72.) Before the Court is the Magistrate Judge's Report and Recommendations (the "Report") filed by United States Magistrate Judge Charmiane G. Claxton on April 15, 2026. (See ECF No. 74.) The Report recommends a civil award to Plaintiff of $127,633.09 in compensatory damages and an additional $1,100.00 in attorney's fees. (Id. at 396.) The Report also recommends that the punitive damages award, if any, be left to the District Court's discretion. (Id.) No objections to the Report have been filed, and the time for filing objections expired on April 29, 2026. See Fed. R. Civ. P. 72(b)(2).

For the reasons stated below, the Report is **ADOPTED IN FULL.** The Court additionally grants a **PUNITIVE DAMAGES AWARD** to Plaintiff of $510,532.36. Although the Report does not make a recommendation about whether to grant default judgment, all procedural requirements for default judgment in this case have been met. (See ECF No. 67, PageID 364.) Having resolved the issue of damages, the Court **GRANTS** Plaintiff's Fifth Motion for Default Judgment.

## I. Background

In May 2017, Plaintiff was preparing to close on a home in Memphis, Tennessee. (See ECF No. 20, PageID 73.) Plaintiff had to make a downpayment as part of the scheduled closing. (Id.) On May 26, 2017, Plaintiff received an email that she believed was from her closing company. (Id.) The email requested a wire transfer of $76,360.55 from Plaintiff's account to an account owned by Defendant Jeffrey Cranford at Citibank. (Id. at 74.) Plaintiff arranged for the money to be transferred from her account at SunTrust Bank. (Id.)

Plaintiff soon realized that the email had been sent by Defendant, not her closing company. (Id.) Plaintiff contacted SunTrust to cancel the payment and was told that the transfer had not yet been completed and would be cancelled. (Id.) However, the transfer was processed nearly two hours later.

(Id.) Plaintiff contacted authorities, and Defendant was later arrested. (Id. at 74-75.)

On May 21, 2018, Plaintiff filed an Amended Complaint against SunTrust, Citibank, and Cranford. (See id. at 72-79.) Plaintiff brought claims of conversion and "fraud and/or misrepresentation" against Cranford. (Id. at 76-77.) Plaintiff sought $150,000 in compensatory damages from all Defendants, jointly and severally, and at least $1,000,0000 in punitive damages from Cranford. (Id. at 78.)

The claims against SunTrust and Citibank have been dismissed, and Cranford is now the only defendant. (See ECF Nos. 64; 65.) Defendant Cranford was properly served on June 26, 2018, (see ECF No. 31-1.), but he did not respond, (ECF 32-1, PageID 116.). On September 6, 2018, Plaintiff requested the entry of a default against Defendant pursuant to Federal Rule of Civil Procedure 55(a). (See ECF No. 32.) The Clerk of the Court entered a default on September 10, 2018. (See ECF No. 35.)

Between September 11, 2018, and October 30, 2023, Plaintiff filed three Motions for Default Judgment against Defendant pursuant to Federal Rule 55(b)(1). (ECF Nos. 36; 38; 44.) Those Motions were denied without prejudice on procedural grounds as well as Plaintiff's failure to provide evidence to support her damages claim. (ECF Nos. 37, PageID 130-31; 42, PageID 217; 51,

PageID 256.) The case was also temporarily stayed pending Defendant's parallel criminal proceeding.[1] (See ECF Nos. 42-43; 51; 53; 57.)

On October 30, 2023, Plaintiff filed her Fourth Motion for Default Judgment against Defendant. (See ECF No. 66.) To support her Motion, Plaintiff relied on the case record and on her previous affidavits. (Id. at 357.) On May 21, 2024, the Court denied Plaintiff's Motion without prejudice because, although Plaintiff had satisfied the procedural requirements for a default judgment, her affidavit was insufficient to determine appropriate damages. (See ECF No. 67, PageID 359, 364, 366.) On July 31, 2024, Plaintiff filed her Fifth Motion for Default Judgment with an updated affidavit providing additional details to support the damages determination. (ECF No. 68; 68-1.) On July 16, 2025, the Court referred Plaintiff's Fifth Motion to the Magistrate Judge to conduct a hearing and recommend the amount of damages, if any, to which Plaintiff would be entitled. (ECF No. 69.)

On March 12, 2026, the Magistrate Judge held an evidentiary hearing. (ECF No. 74, PageID 399.) Plaintiff and her counsel appeared at the hearing; neither Defendant nor any attorney on

---

[1] The stay was lifted on June 1, 2023, (see ECF No. 57.), after Defendant pled guilty and was sentenced, (see ECF No. 53.).

his behalf made an appearance. (Id.) At the hearing, Plaintiff testified about her accounting of the requested damages: $68,441.50, her net loss as a result of the fraudulent transfer, including the wire transfer fee; $3,200.00, the amount she paid in private mortgage insurance, required because she had to make a lower downpayment after the transfer; $56,731.59, pre- and post-judgment interest at 5%, a lower rate than statutorily permitted in Tennessee; $1,100.00, her total attorney's fees; and $29,477.03, the amount of restitution Defendant was ordered to pay after his parallel criminal proceeding, less the $740.00 that he has paid to date. (Id.)[2] Plaintiff also requested a punitive damages award of "one million dollars or, at least, the maximum award the Court finds to be appropriate to deter future conduct." (Id. at 402.)

The Magistrate Judge permitted post-hearing briefing, which Plaintiff filed later the same day. (Id. at 399-400.) In her briefing about punitive damages, Plaintiff set forth the factors in Tennessee Code Annotated Section 29-39-104(a)(4) and her arguments about each factor. (ECF No. 73, PageID 381-83.) As exhibits to her brief, Plaintiff provided the receipt for the wire transfer, Defendant's Plea Agreement and its accompanying

[2] Plaintiff withdrew her requests for $13,779.03, the minimum downpayment on the home, and $500 in additional mortgage payments per month. (Id.)

Statement of Facts, and her bank records evidencing payments made from her account. (See ECF No. 73-1.)

On April 15, 2026, the Magistrate Judge issued the Report. (ECF No. 74.) The Report recommends a civil award to Plaintiff of $127,633.09 in compensatory damages and $1,100.00 in attorney's fees. (Id. at 396.) The Report also recommends that the punitive damages award, if any, be left to the District Court's discretion. (Id.) Defendant has not objected to the Report.

## II. Standard of Review

A magistrate judge may "submit to a judge of the court proposed findings of fact and recommendations for the disposition" of certain issues. 28 U.S.C. § 636(b)(1). The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]." Id. Pursuant to Federal Rule of Civil Procedure 72(b)(2), "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the [magistrate judge's] proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2).

"When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P.

72(b) advisory committee's note to subdivision (a). A district court "need not review, under a de novo or any other standard, those aspects of the report and recommendation to which no specific objection is made." Canaday v. Anthem Cos., 439 F. Supp. 3d 1042, 1045 (W.D. Tenn. 2020) (citing Thomas v. Arn, 474 U.S. 140, 150 (1985)).

**III. Analysis**

The Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(a). (ECF No. 42, PageID 214.) A federal court relying on diversity jurisdiction must apply the substantive law of the state in which it sits and federal procedural law. Biegas v. Quickway Carriers, Inc., 573 F.3d 365, 374 (6th Cir. 2009) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). The Court applies the substantive law of Tennessee in determining damages.

Entry of a default judgment is discretionary. See Trs. of U.A. 614 Health & Welfare Fund v. Wooten Mech., LLC, No. 23-cv-2071, 2023 U.S. Dist. LEXIS 181084, at *2 (W.D. Tenn. Oct. 6, 2023); 10A Wright & Miller's Federal Practice & Procedure § 2685 (4th ed. 2023). Before a default judgment can be granted, a plaintiff must satisfy certain procedural requirements. (See ECF No. 67, PageID 363.) If a plaintiff meets those requirements, the court can consider the issue of damages.

The court also "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "[J]udicial notice may be taken at any stage of the proceedings." Fed. R. Evid. 201(f) advisory committee's note to subdivision (f); e.g., United States v. Ferguson, 681 F.3d 826, 834 (6th Cir. 2012). "Judicial notice is only appropriate if 'the matter [is] beyond reasonable controversy.'" Ferguson, 681 F.3d at 834 (quoting Fed. R. Evid. 201(b) advisory committee's note). "Judicial records are a source of 'reasonably indisputable accuracy' when they record some judicial action such as dismissing an action, granting a motion, or finding a fact." Id. (citation omitted) (citing Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1240 (4th Cir. 1989) ("[T]he appellant's motion contains copies of the guilty pleas that clearly show that the Coils pled guilty to arson. . . . We hold that these guilty pleas are 'not subject to reasonable dispute,' and . . . are properly subject to judicial notice.")). The Court takes judicial notice of Defendant's guilty plea. (See ECF No. 73-1.)

**A. Compensatory Damages and Attorney's Fees**

**1. Law**

In Tennessee, compensatory damages "are intended to compensate an injured plaintiff for personal injury or property

damage and thereby make the plaintiff whole again." Goff v. Elmo Greer & Sons Const. Co., 297 S.W.3d 175, 187 (Tenn. 2009). Although the court accepts all allegations in the pleadings as true as to liability, a plaintiff must still present some evidence of damages. E.g., Dirs. of Ohio Conf. of Plasters & Cement Masons Combined Finds, Inc. v. Indus. Contracting Co., No. 5:17-cv-125, 2017 U.S. Dist. LEXIS 199869, at *4-5 (N.D. Ohio Dec. 4, 2017). The court may rely on affidavits submitted by a plaintiff to determine damages, and the court may also conduct evidentiary hearings at its discretion. Id.; see also Fed. R. Civ. P. 55(b)(2)(B).

**2. Analysis**

The Report recommends a civil award to Plaintiff of $127,633.09 in compensatory damages and an additional $1,100.00 in attorney's fees. (ECF No. 74, PageID 396.) That recommendation relies on the allegations in Plaintiff's affidavit as true and calculates the award based on Plaintiff's quantifiable losses. (Id. at 400-02.) The recommended award also subtracts the portion of the transfer that Citibank and SunTrust have already returned to Plaintiff and the portion of restitution, ordered in Defendant's parallel criminal proceeding, that Defendant has already paid. (Id.) Defendant has not objected. There is no clear error in the Report. The Magistrate Judge's recommendations are **ADOPTED IN FULL.**

**B. Punitive Damages**

**1. Law**

Punitive damages, unlike compensatory damages, "are intended to 'punish a defendant, to deter him from committing acts of a similar nature, and to make a public example of him.'" Goff, 297 S.W.3d at 187 (citation omitted). Punitive damages are only appropriate in the "most egregious cases" and should only be awarded when there is "clear and convincing evidence that the defendant acted intentionally, fraudulently, maliciously, or recklessly." Id.; e.g., Tenn. Code Ann. § 29-39-104(a)(1). "[C]lear and convincing evidence" is "evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn" from it, Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992), "such that the truth of the facts asserted [is] 'highly probable,'" Goff, 297 S.W.3d at 187 (citation omitted).

"[G]rossly excessive" punitive damages awards violate due process. See BMW of N. Am. v. Gore, 517 U.S. 559, 574 (1996) ("Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose."); Goff, 297 S.W.3d at 191. Although no "bright-line ratio" exists "which a punitive damages award cannot exceed," Goff, 297 S.W.3d at 193

(citation omitted), "a punitive damages award of 'more than 4 times the amount of compensatory damages' might be 'close to the line' of constitutional impropriety," Flax v. DaimlerChrysler Corp., 272 S.W.3d 521, 537 (Tenn. 2008) (quoting Gore, 517 U.S. at 574) (citation modified). "Low awards of compensatory damages may properly support a higher ratio" if "a particularly egregious act has resulted in only a small amount of economic damages," "the injury is hard to detect," or "the monetary value of noneconomic harm might have been difficult to determine." Gore, 517 U.S. at 582.

In determining punitive damages, Tennessee Code Annotated Section 29-39-104(a)(4) provides that a court must consider, "to the extent relevant":

> the defendant's financial condition and net worth; the nature and reprehensibility of the defendant's wrongdoing; the impact of the defendant's conduct on the plaintiff; the relationship of the defendant to the plaintiff; the defendant's awareness of the amount of harm being caused and the defendant's motivation in causing such harm; the duration of the defendant's misconduct and whether the defendant attempted to conceal such misconduct; the expense plaintiff has borne in attempts to recover the losses; whether the defendant profited from the activity, and if defendant did profit, whether the punitive award should be in excess of the profit in order to deter similar future behavior; whether, and the extent to which, defendant has been subjected to previous punitive damage awards based upon the same wrongful act; whether, once the misconduct became known to defendant, defendant took remedial action or attempted to make amends by offering a prompt and fair settlement for actual harm caused; and any other circumstances shown by the evidence that

bear on determining a proper amount of punitive damages.

Tenn. Code Ann. § 29-39-104(a)(4).

Section 29-39-104(a) generally caps punitive damages at either two times the total compensatory damages awarded or $500,000, whichever is greater. Id. § 29-39-104(a)(5). However, this cap does not apply where, as here, "the defendant's act or omission results in the defendant being convicted of a felony under the laws of this state, another state, or under federal law, and that act or omission caused the damages or injuries." See id. § 29-39-104(a)(7)(D).

Recent decisions applying Tennessee law have involved fraud claims subject to this cap. Some decisions set punitive damages at the maximum amount allowable under the cap. See, e.g., Korshoff v. Wesley Fin. Grp., LLC, No. M2022-00630, 2024 Tenn. App. LEXIS 49, at *58 (Feb. 6, 2024). Exceptions include where a large compensatory award rendered a lower punitive damages award appropriate, e.g., Wu v. Passive Wealth Builders, LLC, No. 2:21-cv-02205, 2:22-cv-02191, 2024 U.S. Dist. LEXIS 61353, at *25 (W.D. Tenn. Apr. 3, 2024), and where the defendant's status as a large corporation made a high punitive-to-compensatory damages ratio appropriate, Overton v. Westgate Resorts, Ltd., No. E2014-00303, 2015 Tenn. App. LEXIS 45, at *25-26, *34 (Jan. 30, 2015).

**2. Analysis**

Plaintiff has adequately shown that Defendant's actions were intentional given his guilty plea in the parallel criminal proceeding. (See ECF No. 73-1, PageID 386-94.) Thus, punitive damages are appropriate in this action.

Plaintiff requests "an award of one million dollars [in punitive damages] or, at least, the maximum award the Court finds to be appropriate to deter future conduct." To support her request, Plaintiff has discussed the factors enumerated in Section 29-39-104(a)(4), and the Court considers each factor below.

**a. Defendant's Financial Condition and Net Worth**

No evidence has been presented of Defendant's financial condition in this action other than the evidence about Defendant's 2017 fraud schemes. (See ECF Nos. 73; 73-1; 74.)

**b. Nature and Reprehensibility of Defendant's Wrongdoing**

Defendant pled guilty to knowingly and intentionally committing wire fraud, a federal crime with a maximum penalty of not more than twenty years in prison and a fine of not more than $250,000, followed by a period of supervised release. (ECF No. 73-1, PageID 386.)

**c. Relationship of Defendant to Plaintiff**

This factor is not relevant. Defendant and Plaintiff do not know each other. (See ECF No. 73, PageID 382.)

**d. Impact of Defendant's Conduct on Plaintiff**

Defendant's conduct caused Plaintiff to unknowingly transfer her intended downpayment for a home to Defendant rather than to her closing company. This conduct resulted in Plaintiff's losing: $68,416.50 from the fraudulent transfer; the $25.00 wire transfer fee; $3,200.00 in private mortgage insurance; and $56,731.59 in interest on the $68,416.50 of which she has lost the use since 2017.

**e. Defendant's Awareness of and Motivation for Causing Such Harm**

Defendant pled guilty to knowingly and intentionally committing wire fraud.

**f. Duration of Defendant's Misconduct and Attempts to Conceal the Misconduct**

Defendant admitted in his plea agreement that he engaged in conspiracy to commit wire fraud from at least February 2017 to December 2017. (ECF No. 73-1, PageID 390.) Defendant also admitted that, when Plaintiff's May 26, 2017 wire transfer arrived in his Citibank account, he then wired portions of that money to three other accounts on May 30 and 31, with one transfer accompanied by the message "hurry." (Id. at 392.)

Defendant admitted that he told the FBI that Plaintiff's wire transfer was a loan from an employee of one of his contacts. (Id. at 393.) He admitted that, after the FBI informed him that Plaintiff's money had been unlawfully misdirected, Defendant communicated with his lenders, whom he knew to be running their own fraud schemes, telling them that the FBI and Secret Service had contacted him. (Id.) Defendant admitted that he continued trying to obtain money from these lenders. (Id.)

**g. Plaintiff's Expenses Borne in Attempting to Recover the Losses**

In addition to the $68,416.50 Plaintiff lost as a result of the fraudulent transfer, Plaintiff also spent: $25.00 for the wire transfer fee; $3,200 in required private mortgage insurance to avoid losing the home; $1,100 in attorney's fees for this action; and $56,731.59 in interest on the $68,416.50 of which she lost the use since 2017.

**h. Defendant's Profit from the Activity and the Need for the Punitive Award to Exceed the Profit to Deter Similar Future Behavior**

Defendant's plea agreement contains evidence of Defendant's profit in this civil action. (See ECF 73-1, PageID 386-94.) The need for the punitive damages award to exceed the profit for the purposes of deterrence is substantial here given the nature and extent of Defendant's wrongdoing.

**i. Whether Defendant Has Been Subjected to Previous Punitive Damage Awards Based upon the Same Wrongful Act**

There is no evidence of any prior punitive damage awards. (See ECF Nos. 73; 73-1; 74.)

**j. Whether, once the Misconduct Became Known to Defendant, Defendant Took Remedial Action or Attempted to Make Amends by Offering a Prompt and Fair Settlement for Actual Harm Caused**

There is no evidence that Defendant took any remedial action or attempted to make amends. (See ECF Nos. 73; 73-1; 74.)

On balance, the Section 29-39-104(a)(4) factors do not support Plaintiff's initial request for a one-million-dollar punitive damages award. Such an award would exceed the compensatory damages award by a ratio of 7.83 to 1. That is inconsistent with the general guideline that an award ratio exceeding 4 to 1 risks violating due process. This case is not one in which a "particularly egregious act" resulted in "only a small amount of economic damages," thereby justifying a higher punitive-to-compensatory damages award ratio. Rather, Defendant's action resulted in proportional and quantifiable damages: Plaintiff's economic losses. Those losses are straightforward as Plaintiff's post-hearing brief demonstrates in its accounting of the compensatory damages request. The facts here differ from other cases in which punitive damages properly

exceeded the compensatory award by a significant margin given a defendant’s resources as a large corporation.

The Section 29-39-104(a)(4) factors support a substantial punitive damages award. Defendant knowingly and intentionally engaged in reprehensible, felonious conduct over the course of several months. His conduct significantly harmed Plaintiff. Defendant profited from his conduct and took no subsequent remedial action, but instead attempted to conceal his wrongful activity. The punitive damages award here should exceed Defendant’s profit to deter similar misconduct in the future. The Court awards Plaintiff $510,532.36 in punitive damages, equivalent to a 4 to 1 punitive-to-compensatory damages award ratio.

## IV. Conclusion

The Magistrate Judge’s Report is **ADOPTED IN FULL.** Plaintiff is **AWARDED** $127,633.09 in compensatory damages and $1,100.00 in attorney’s fees. The Court **AWARDS PUNITIVE DAMAGES** of $510,532.36. Plaintiff’s Fifth Motion for Default Judgment is **GRANTED.**

SO ORDERED this 30th day of October, 2026.

*/s/ Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE